UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CRYSTAL CAY ENGELHART MALANG,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:13-cv-06046-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of the Defendant Commissioner's denial of her application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, the Commissioner's decision to deny benefits is AFFIRMED.

FACTUAL AND PROCEDURAL HISTORY

On November 5, 2010, Plaintiff protectively filed a DIB application, alleging disability as of October 30, 2008, due to neck and shoulder problems, hearing loss, and sleep problems. See Administrative Record ("AR") 151-57, 221, 225, 247. Her application was denied upon initial administrative review and on reconsideration. See AR 103-05, 107-08. A hearing was held before an administrative law judge ("ALJ") on May 8, 2012, at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert ("VE"). See AR 43-80.

ORDER - 1

On May 25, 2012, the ALJ issued a decision finding Plaintiff not disabled. See AR 25-37. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 18, 2013, making the ALJ's decision the Commissioner's final decision. See AR 1-6; see also 20 C.F.R. § 404.981, § 416.1481. On December 7, 2013, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF # 1. The administrative record was filed with the Court on February 13, 2014. See ECF ## 11, 12. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for payment of benefits, because the ALJ erred: (1) in failing to include urge incontinence as a severe impairment at step two, (2) in evaluating the medical evidence in the record; (3) in discounting Plaintiff's credibility; and (4) in assessing Plaintiff's residual functional capacity ("RFC"). For the reasons set forth below, the Court disagrees that the ALJ erred in determining Plaintiff to be not disabled, and therefore affirms the Commissioner's decision. Although Plaintiff requests oral argument (ECF # 13), the Court finds such argument to be unnecessary here.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner

ORDER - 2

v. Sec'y of Health and Hum. Servs., 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

## I. The ALJ's Step Two Determination

Plaintiff argues that the ALJ erred in failing to include urinary urge incontinence as a severe impairment at step two. The ALJ noted that Plaintiff experienced incontinence issues, but that post-bladder surgery they caused "only transient and mild symptoms and limitations, did not persist for twelve continuous months, and do not have greater than [] minimal limitations on the claimant's ability to perform basic work activities and are therefore considered non severe." AR

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

28. Plaintiff argues that she continued to experience urge incontinence issues post-surgery, and that even if urge incontinence was not a severe impairment, the ALJ should have considered the limitations it causes when assessing her RFC.

A.    Legal Standards

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (Jul. 2, 1996).  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect [her] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

//

ORDER - 4

B.     Urge Incontinence

The medical record contains evidence that Plaintiff complained of urge incontinence, but does not contain any medical opinion regarding the limitations caused by Plaintiff's urge incontinence.  See AR 699, 717.  The only evidence of record establishing the limitations caused by Plaintiff's urge incontinence is Plaintiff's hearing testimony.  See AR 58-59, 68.  The record does not show that Plaintiff sought treatment for her urge incontinence post-surgery, even though her treating physician believed that treatment was available.  AR 717.

The dearth of objective evidence establishing the existence of limitations caused by Plaintiff's urge incontinence is fatal to her assignment of error, because there is no medical evidence establishing the severity of the impairment.  See SSR 96-3p, at *2 (Jul. 2, 1996) (instructing an ALJ to perform "a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities").  As explained *infra*, the ALJ's adverse credibility determination is supported by substantial evidence, and thus the ALJ was not required to credit Plaintiff's subjective description of limitations when crafting the RFC assessment.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  Accordingly, Plaintiff has not established a step-two error.

II.    The ALJ's Evaluation of the Medical Evidence in the Record

Plaintiff argues that the ALJ erred in discounting opinions provided by treating physicians Julian Arroyo, M.D., and William Morris, M.D., and examining physician Jeffrey Patterson, M.D.  The Court will address each physician's opinion in turn.

//

ORDER - 5

A.     Legal Standards

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

ORDER - 6

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson , 359 F.3d at 1195; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

B.     Dr. Arroyo

Dr. Arroyo treated Plaintiff throughout the relevant period and afterward, and provided two disputed opinions regarding her functioning.  AR 310, 377.  The ALJ credited portions of these opinions, but rejected Dr. Arroyo's opinion that Plaintiff could seldom work above shoulder level, and that she was limited to occasional reaching, on the grounds that the medical evidence did not establish a reaching limitation, and that the opinion was contradicted by Plaintiff's daily activities and her demonstration of reaching during the administrative hearing. AR 35.  The ALJ also rejected a later opinion[2] that Plaintiff could lift 11-20 pounds on a seldom basis (AR 311), but provided no explicit reason for that rejection.  AR 35.

Plaintiff argues that the ALJ erred in failing to cite any contradictory medical evidence,

---

[2] The ALJ mistakenly attributed this opinion to Dr. Arroyo, but it was actually provided by Dr. Patterson.  The Court addresses this opinion in the Dr. Patterson subsection.

ORDER - 7

and that neither her daily activities nor her brief demonstration of reaching at the administrative hearing meaningfully contradict Dr. Arroyo's opinion on reaching limitations.  She also contends that because the ALJ's rejection of the limitation on lifting 11-20 pounds on a seldom basis is entirely unexplained, it is erroneous.

The Court agrees with Plaintiff.  The ALJ failed to cite any medical evidence contradicting Dr. Arroyo's opinions, which is particularly problematic because Dr. Arroyo's treatment notes during the relevant period are replete with references to reaching limitations.  See, e.g., AR 375 (December 2009 treatment note documenting physical examination and findings that Plaintiff cannot lift more than 20 pounds, cannot repetitively reach with either shoulder, and cannot perform "overhead work"), 376 (November 2009 treatment note documenting physical examination and findings that Plaintiff cannot lift more than 20 pounds, and cannot repetitively reach), 384 (May 2009 treatment note indicating Plaintiff reported right shoulder pain with reaching and overhead activities, and that her pain limited her range of motion), 384 (March 2009 treatment note documenting physical examination and findings indicating that Plaintiff should not lift more than 10 pounds, and should not do any "overhead work" with her left arm), 387 (January 2009 treatment note documenting physical examination and findings indicating that Plaintiff is precluded from reaching with her left arm, cannot do "overhead work," and cannot lift more than five pounds).  None of Plaintiff's self-reported activities — traveling, walking, attending church, and occasionally shopping and cleaning — directly contradict Dr. Arroyo's opinions, because those activities do not necessarily involve repetitive reaching or working above the shoulder.  Plaintiff's brief demonstration of overhead reaching at the administrative hearing (described at AR 31) does not amount to substantial evidence contradicting Dr. Arroyo's opinions.  Thus, the ALJ erred in rejecting aspects of Dr.

ORDER - 8

Arroyo's opinions without providing specific and legitimate reasons.

The Commissioner argues that any error is harmless, because "there was no evidence that [reaching or lifting overhead] restrictions would preclude performance of Plaintiff's work as a real estate agent[.]" ECF # 19, p. 10.  This is not true as to the work as generally performed, because the Dictionary of Occupational Titles ("DOT") defines the job to require frequent reaching and occasional lifting of up to 20 pounds.  See DOT 250.357-018, 1991 WL 672361. But Plaintiff herself described her past work as involving no reaching and lifting no more than 10 pounds at any time, and did not mention any overhead work.  AR 226-27.  Thus, the ALJ's error with respect to Dr. Arroyo's opinions is harmless in light of the ALJ's finding that Plaintiff can perform her past work as actually performed, because even if the ALJ had credited all of Dr. Arroyo's opinions, that aspect of her step-four finding would not have been affected.  See AR 36 (finding that Plaintiff can perform her past work as actually performed); Pinto v. Massnari, 249 F.3d 840, 845 (9th Cir. 2001) (instructing that an ALJ may rely on a claimant's description of her past work in a vocational report or in testimony when rendering an as-actually-performed finding).

  C. Dr. Morris

Dr. Morris treated Plaintiff before, during, and after the relevant period, and consistently recommended neck surgery.  See AR 330, 336.  Plaintiff wanted to avoid having surgery, and also had trouble getting coverage for the surgery.  AR 656.  Dr. Morris opined in January 2012, after not having treated Plaintiff for a year and a half, that she still needed neck surgery, and that she also needed carpal tunnel ligament release surgery.  Id.  He noted that she planned to have surgical treatment on her right shoulder.  He further opined that she could not work until after she recovered from these surgeries.  AR 657.

ORDER - 9

The ALJ gave Dr. Morris's opinion little weight, because she found that he relied "heavily" on Plaintiff's self-report, rather than objective medical evidence. AR 35. She noted that Dr. Morris treated Plaintiff only twice during the relevant period, and that his findings on those visits would not support his January 2012 opinion. AR 35 (referencing AR 330, 335-36). Both of those treatment notes indicate that Dr. Morris reviewed a recent cervical MRI, and that he interpreted those reports to show significant bilateral foraminal stenosis at C5-6. AR 330, 336. The ALJ cited medical evidence purportedly inconsistent with Dr. Morris's MRI interpretation: a February 2009 MRI report indicating "moderate bilateral neuroforaminal stenosis" at C5-6, which had been also present during a 2007 MRI (performed during a time when Plaintiff was working); and a July 2010 MRI report indicating "mild narrowing of the right neural foramen" at C5-6. AR 343, 533.

Dr. Morris performed physical examinations of Plaintiff on both of the treatment visits during the relevant period, as well as at the time he rendered his January 2012 opinion. AR 330, 335-36, 656-67. His reference to those findings, as well as to MRI reports, contradicts the ALJ's finding that Dr. Morris relied "heavily" on Plaintiff's self-report rather than objective evidence. But, as the ALJ noted, other medical opinions contradicted Dr. Morris's interpretation of the MRI results, most pointedly as to the medical opinion that Plaintiff's C5-6 neuroforaminal stenosis had existed during a time that she was working. This evidence undermines Dr. Morris's opinion that Plaintiff could not work without neck surgery, and serves as a specific and legitimate reason to discount Dr. Morris's opinion. Thus, the ALJ did not err in discounting Dr. Morris's opinion.

D.     Dr. Patterson

Dr. Patterson examined Plaintiff in March 2010, in connection with her Department of

ORDER - 10

Labor & Industries claim. AR 312-28. He concluded that Plaintiff could "work at a sedentary occupation with a lifting requirement of less than 20 pounds below shoulder level." AR 327. The ALJ gave "little weight" to Dr. Patterson's opinion, because his findings indicated that Plaintiff had no trouble walking and sitting, and her motor strength test results were normal. AR 34. The ALJ also noted that Plaintiff reported to Dr. Patterson that she was currently working. AR 34-35 (referencing 314). The ALJ also indicated generally that Dr. Patterson's opinion was inconsistent with other medical evidence as well as Plaintiff's activities of daily living. AR 35.

Plaintiff focuses on the lifting requirements of a sedentary job, arguing that Dr. Patterson's opinion focused on Plaintiff's shoulder limitations (which caused lifting restrictions) in reaching his sedentary finding, rather than focusing on the sitting/walking aspects of a sedentary job. This argument is supported by Dr. Patterson's own estimate of Plaintiff's physical capacities, which indicates that Plaintiff can sit, stand, and walk eight hours a day each, but that she can only seldom (less than 10% of the time) lift 11-20 pounds, and can frequently lift 6-10 pounds. AR 311. Neither the ALJ nor the Commissioner in her briefing appreciate that this summary estimate of physical capacities was completed by Dr. Patterson; both indicated that it was an opinion of Dr. Arroyo's. AR 35; ECF # 19, at 9-10. In any event, the ALJ's reasoning regarding walking and sitting is not a legitimate basis to discount Dr. Patterson's opinion, because Dr. Patterson himself acknowledged that Plaintiff was not limited as to walking or sitting.

Neither is Dr. Patterson's opinion inconsistent with her ability to work as a real estate agent (assuming the accuracy of her statement to that effect to Dr. Patterson), because Plaintiff described her job requirements to be consistent with Dr. Patterson's opinion. Compare AR 227 with AR 311. Thus, the ALJ's reference to Plaintiff's work at the time of Dr. Patterson's

ORDER - 11

evaluation does not provide a basis for discrediting Dr. Patterson's opinion.

Finally, the ALJ's reasoning that Dr. Patterson's opinion is "not supported by the other medical evidence of record" lacks specificity, and is not necessarily accurate. Dr. Arroyo indicated that Plaintiff was limited to occasionally lifting 10 pounds and seldom lifting 20 pounds (AR 310), and the State agency reviewing physician found that Plaintiff was limited in her ability to reach overhead (AR 99).

Furthermore, none of Plaintiff's daily activities (as summarized by the ALJ (AR 34)) are inconsistent with Dr. Patterson's opinion. Although the Commissioner suggests that Plaintiff's ability to launder is inconsistent with Dr. Patterson's opinion, it would be unreasonable to infer that Plaintiff's laundry tasks required lifting more than 20 pounds, or that they required lifting above shoulder level. Plaintiff testified at the hearing that she does three loads of laundry per month (AR 66), and this frequency does not suggest an inconsistency.

Thus, because none of the reasons provided by the ALJ for discounting Dr. Patterson's opinion are specific and legitimate, the ALJ erred in assigning little weight to the opinion. This error is harmless, however, because none of the limitations indicated on Dr. Patterson's physical capacities estimate are inconsistent with Plaintiff's own description of her past work. Compare AR 227 with AR 311. Thus, the ALJ's step-four finding that Plaintiff could perform her past work as actually performed would not be altered even if Dr. Patterson's opinion were fully credited as true.

III.     The ALJ's Assessment of Plaintiff's Credibility

The ALJ provided several reasons for discounting Plaintiff's credibility, specifically (1) her conduct at the administrative hearing, demonstrating an ability to move her head, hear without hearing aids, manipulate a small object, and raise her arms above her head; (2) her

ORDER - 12

ability to work in the past, despite neck/shoulder problems and carpal tunnel syndrome; (3) her reluctance to take pain medications, despite pain complaints; (4) inconsistent activities of daily living; and (5) evidence showing that Plaintiff reported continued employment after her alleged onset of disability.  AR 30-34.

### A. Legal Standards

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third

ORDER - 13

parties regarding the nature, onset, duration, and frequency of symptoms. See id.

B.     Inconsistent Statements Regarding Employment

Plaintiff reported to providers on a number of occasions that she was currently working, during the period she alleged disability and after her date last insured. See AR 314, 402, 404, 407, 590, 592. Plaintiff does not challenge this credibility factor in her Opening Brief, and therefore any arguments on this issue raised for the first time on Reply (ECF # 20, p. 2) are waived. Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived."). Because substantial evidence in the record supports the ALJ's finding that Plaintiff made inconsistent statements regarding her work history and/or ability to work, the ALJ did not err in discounting her credibility on that basis. See SSR 96-7p, 1996 WL 374186, at *5 (Jul. 2, 1996) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

C.     Work History/Lack of Treatment

The ALJ noted that Plaintiff had been diagnosed with carpal tunnel syndrome and degenerative disc disease years before her alleged onset of disability, and continued to work as a real estate agent with some of the same symptoms she now contends are disabling. AR 31. The ALJ also noted that Plaintiff's February 2009 MRI results were noted to be similar to findings dating to a time when Plaintiff was working. AR 31 (citing AR 532-33, 728). Particularly as to her carpal tunnel syndrome, which Plaintiff mentioned at the administrative hearing as the first reason why she cannot work (AR 54), the record does not corroborate her allegation that this condition worsened over time. See, e.g., AR 322 (Dr. Patterson's report referencing Dr. Arroyo's September 2007 evaluation (AR 461) that noted, *inter alia*, carpal tunnel syndrome),

ORDER - 14

506-08 (September 2010 physical therapy note mentioning Plaintiff's self-reported worsening carpal tunnel syndrome, but carpal tunnel issues not noted in the therapist's assessment or treatment plan), 655 (Dr. Arroyo's January 2008 note indicating EMG evidence of "early left carpal tunnel syndrome," but he did not include this diagnosis in his assessment or recommend any particular treatment), 728 (2007 report regarding Plaintiff's mild left carpal tunnel syndrome), 731 (2005 report regarding Plaintiff's mild bilateral carpal tunnel syndrome).

The record contains scant references to carpal tunnel syndrome, and no evidence that the condition was ever treated, which is inconsistent with Dr. Morris's 2012 opinion that she required carpal tunnel surgery and that she could not work until after she recovered from that surgery. AR 656-57. The ALJ properly considered evidence showing that Plaintiff had previously worked with carpal tunnel syndrome in evaluating the credibility of her disability allegation. See Porter v. Astrue, 403 Fed. Appx. 226, 227 (9th Cir. 2010) ("[W]e note that [the claimant] was able to hold a job and engage in many other personal and social activities for many years, and there is no indication that his condition has significantly changed.").

The Court need not address the other reasons provided by the ALJ, because even if they are erroneous, they would not invalidate the reasons addressed here, and thus would amount to harmless error. See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

IV.     The ALJ's Assessment of Plaintiff's RFC

Plaintiff argues that the ALJ's RFC assessment is flawed because it does not account for the limitations caused by her hearing loss. The ALJ acknowledged that Plaintiff's hearing had been tested and that she wears hearing aids. AR 28 (citing AR 803). At the administrative hearing, Plaintiff testified that she has trouble hearing in large groups, when "there's lots of noise

ORDER - 15

buzzing around." AR 55-56. The ALJ limited Plaintiff to working in environments that do "not involve noise above a moderate level." AR 30. Plaintiff contends that this limitation does not adequately address her hearing concerns, because she experiences hearing problems even in a quiet environment. ECF # 13, p. 11.

### A.     Legal Standards

A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996). RFC thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

### B.     Hearing Limitations

Plaintiff's argument regarding her hearing limitations assumes that the ALJ should have inferred various limitations from her conduct during the administrative hearing. The medical record contains no description of any hearing limitations. Plaintiff herself did not describe any particular limitations, other than having trouble in noisy environments, yet in her Opening Brief suggests that the ALJ should have inferred from her requests to have statements repeated during the administrative hearing that she has problems discriminating sounds in noisy and quiet environments. ECF # 13, p. 11. It is not clear from the transcript of the administrative hearing

ORDER - 16

that when Plaintiff asked her attorney to repeat his question (AR 54), or asked the VE to speak louder (AR 74), that Plaintiff was demonstrating any particular hearing limitation, or that she was more limited than accounted for in the ALJ's RFC assessment and VE hypothetical.  Due to this dearth of evidence regarding Plaintiff's specific hearing limitations, she has not established that the ALJ erred in failing to account for more severe limitations.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded Plaintiff was not disabled.  Accordingly, the Commissioner's decision to deny benefits is AFFIRMED.

DATED this 8th day of September, 2014.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17